GERTRUDE T. KELLIHER *vs.* NEW HAVEN CLOCK COMPANY ET AL.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued June 9th—decided July 10th, 1936.

*Martin E. Gormley,* for the appellants (defendants).

*Thomas R. Robinson,* with whom, on the brief, was *David M. Reilly,* for the appellee (plaintiff).

BROWN, J. The following undisputed material facts appear by the finding: Dennis C. Kelliher, the deceased husband of the plaintiff, was on November 16th, 1934, and for five or six years prior thereto had been, an employee of the defendant Clock Company, his average wages being in excess of $46 per week. The plaintiff and their three-year old son survived the decedent and were living with and being supported by him at the time of his death. Between 2 and 3 o'clock on the morning of the date stated, he was instantly killed in an automobile accident in Morristown, Pennsylvania, while driving his car westerly on United States Route number twenty-two. The accident was not caused by the decedent's wilful or serious misconduct or by his intoxication.

During his employment and at the time of his death the decedent was at the head of the Clock Company's automotive sales division, charged with the responsi-

bility for the sales thereof, the territory under his supervision including the entire United States, and whenever necessary and practicable his duties could take him to any point therein, though the farthest trips west he had actually made were to Chicago and Kansas City. His traveling expenses incurred in the discharge of these duties were paid by the company from a travel account, the decedent drawing against this and on his return presenting vouchers to the comptroller indicating the towns he had gone to and for what the money had been spent, the allowance for the item of transportation, except as hereinafter stated, being confined to the regular fare by public conveyance. Any voucher item which appeared to the comptroller unusual or exorbitant was referred to the president who took it up with the decedent. The company thus kept in touch with the decedent's expenditures for travel, and at times through its president criticized or discussed them with the decedent, but it always honored the vouchers he presented.

As a part of his duties in sales promotion, the decedent, after obtaining the company's approval, would arrange for exhibits and his attendance at various manfacturers' and jobbers' conventions. At the time he was killed the decedent was on his way to such a convention at Cleveland, Ohio, having left New Haven late the preceding afternoon with samples of the company's merchandise in his automobile, and having picked up Dodd C. Coster, a publisher's representative also bound for the convention, in New York City. They expected to spend the night at Harrisburg, Pennsylvania and to arrive in Cleveland late on November 16th, that the decedent might complete his arrangements for a hotel suite and his display in connection with the convention opening on the 17th. The company had no actual knowledge either of the means of

transportation contemplated or used by the decedent for his trip, or that Coster was to accompany him, but had expressly approved of his attendance at the convention.

The principal issue of fact in controversy at the hearing before the commissioner was as to the extent of the decedent's use of his automobile for transportation in the discharge of his duties as such sales manager of the company with its knowledge and approval. The defendants' contention was that while he had admittedly used it pursuant to the company's permission for trips within the limited area between Boston and New York, and throughout New England, and been allowed six cents per mile therefor, his use of it beyond these limits was not only expressly forbidden, but had never occurred with its knowledge or approval. The plaintiff contended that there had been no such limitation upon the decedent's use of his car but that he had used it at his discretion in going wherever he had occasion to, in connection with the company's business, including trips to places in Pennsylvania and Indiana, and as far west as Kansas City and Chicago, all with the company's knowledge and approval. Upon the conflicting evidence offered the commissioner resolved this issue in favor of the plaintiff and the court upon the defendants' appeal sustained the commissioner. Its refusal to correct the commissioner's finding in several particulars predicated upon his determination of this underlying question is assigned as error upon the present appeal.

An extended discussion of these claimed corrections is uncalled for, particularly in view of the careful and detailed analysis thereof contained in the trial court's memorandum of decision. As to the underlying question involved, suffice it to say that there was evidence that the decedent had used his car upon a number of

occasions to take trips on the company's business outside of New England, and in one instance at least, as far west as Chicago; that his practice was to present to the company's comptroller vouchers for his travel expenses indicating the towns he had visited and charging six cents per mile whenever his automobile was used for transportation; that if any such items appeared unusual or exorbitant the comptroller took them up with the president and he in turn with the decedent; but that in fact all of the vouchers so presented by the decedent had been honored by the company. Upon this evidence, notwithstanding the testimony of the company's president expressly to the contrary, the commissioner was warranted in finding that the decedent had used his car at his own discretion for any trip he had to take on the company's business, that the company had knowledge thereof, and that by its conduct it had approved of the course so followed.

Accordingly these further facts are properly a part of the finding. Under the item of "transportation" in the undisputed facts above recited, was included also an allowance of six cents per mile whenever the decedent had used his own automobile instead of public conveyance. He was accustomed so to use it on business trips for the company at his own discretion and whenever he deemed it advisable. This trip to Cleveland was upon the company's business and his mode of travel was proper and within his discretion.

The other error assigned by the defendants relates to the conclusion of the commissioner, which the court refused to disturb, that the accident and decedent's injury and death arose out of and in the course of his employment, predicating their claim in this connection upon this contention in their brief: "the deceased met his death [1] at a time and place where he should not reasonably have been, and [2] he was operating a

motor vehicle without the knowledge and contrary to the direct orders of his employer." This is tantamount to a contention that the decedent at the time of the accident was not acting in the course of his employment. As is apparent from what we have already said concerning the finding, there is no factual basis to sustain this proposition. On the contrary it does appear therefrom that the elements which we have repeatedly declared essential to an employee's acting in the course of the employment are present. "An injury to an employee is said to arise in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it." *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 308, 97 Atl. 320; *Whitney* v. *Hazard Lead Works*, 105 Conn. 512, 517, 136 Atl. 105; *Harivel* v. *Hall-Thompson Co.*, 98 Conn. 753, 755, 120 Atl. 603; *Ohmen* v. *Adams Brothers*, 109 Conn. 378, 386, 146 Atl. 825. Upon the facts found it is clear that the accident resulting in the decedent's death which thus occurred in the course of the employment, was a natural and necessary incident or consequence of the employment, or of the conditions under which it was carried on, though not foreseen or expected. The essential causal connection appears therefore to support the further conclusion that it arose out of the employment. *Larke* v. *Hancock Mutual Life Ins. Co.*, supra, p. 309; *Taylor* v. *St. Paul's Universalist Church*, 109 Conn. 178, 183, 145 Atl. 887. And where as here benefit to the employer was involved, this is so even though the particular act of the employee was permitted merely, rather than required. *Smith* v. *Seamless Rubber Co.*, 111 Conn. 365, 368, 150 Atl. 110.

In the case of *Bendett* v. *Mohican Co.*, 98 Conn. 544,

120 Atl. 148, we held the employer liable upon facts very similar to those here. In that case, of an employee killed in an automobile accident on the highway while driving pursuant to his employment, after pointing out that the contract of employment required the decedent to travel between the places in question as occasion arose in his work, and that the employer intended to pay his transportation by rail while so traveling, at page 548 we continued: "This transportation was incidental and necessary to his employment, hence the employment continued during the transportation. This travel was a substantial part of the work he was employed to do. Under the facts found, travel on its business by his own automobile instead of by train was approved by the defendant as work done under Bendett's employment; therefore while so traveling he continued in its employ, and dangers arising from such travel were incidental to his employment. *Swanson* v. *Latham,* 92 Conn. 87, 90, 101 Atl. 492. The subordinate facts found fully justify the commissioner's conclusion that Mr. Bendett's injury and death occurred in the course of, and arose out of, his employment." These words are equally applicable to this case. Other of our decisions have recognized the same general principle of an employer's liability for injuries sustained by the employee resulting from dangers of highway travel incidental to the employment. *Lake* v. *Bridgeport,* 102 Conn. 337, 343, 128 Atl. 782; *Flanagan* v. *Webster & Webster,* 107 Conn. 502, 505, 142 Atl. 201; *Ohmen* v. *Adams Brothers,* supra; *Boulanger* v. *First National Stores, Inc.,* 115 Conn. 665, 669, 163 Atl. 261. The present case, where travel by automobile was an incident of the decedent's employment, is clearly distinguishable from the cases relied upon by the defendants, of employees whose area of employment is within defined limits, requiring no use of the highways

beyond what is common to the ordinary person not so employed, as the cases above cited clearly demonstrate.

There is no error.

In this opinion the other judges concurred.