STANLEY S. KALISZEWSKI *v.* WEATHERMASTER ALSCO CORPORATION ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued June 8—decided July 25, 1961

*David B. Greenberg,* with whom was *Norman E. Hurwitz,* for the appellants (defendants).

*Dominic A. DePonte,* with whom, on the brief, was *George G. McManus, Jr.,* for the appellee (plaintiff).

BORDON, J. The plaintiff was awarded compensation under the Workmen's Compensation Act as an employee of the defendant Weathermaster Alsco Corporation. The appeal of the defendants was dismissed by the Superior Court. From its judgment, the defendants have appealed to us. They claim error in the failure of the trial court to correct the commissioner's finding. The commissioner, on the defendants' motion to correct, added to the finding certain facts claimed by the defendants but refused to include others or to strike from the finding facts which the defendants alleged were found without evidence. The court corrected the finding by including additional facts but refused any further corrections. The ruling was correct. Practice Book § 312; *Marschner* v. *American Hardware Corporation,* 141 Conn. 742, 747, 110 A.2d 461; *Greenberg* v. *Electric Boat Co.,* 142 Conn. 404, 407, 114 A.2d 850; Maltbie, Conn. App. Proc. § 251.

The finding, as corrected, discloses the following facts: On February 24, 1958, Weathermaster was subject to the provisions of chapter 373 of the 1949 Revision, as amended (General Statutes, c. 566),

and had complied therewith by insuring the risk with the defendant insurer. Weathermaster was engaged in the business of selling aluminum siding and of contracting with homeowners for the re-siding of their houses. It had entered into a written contract with Allan G. Campbell to re-side his house on Quinnipiac Avenue in North Haven and needed employees to do the work. In the contract, Weathermaster represented that its installers were covered by workmen's compensation and public liability insurance. On February 20, 1958, Joseph D. Levine, who, though not an officer of Weathermaster, was in charge of its New Haven office, advertised, on instructions from his superior in Hartford, in a New Haven newspaper for "siding applicators." The advertisement expressed a preference for men with aluminum siding experience. The practice among siding applicators or installers is for two men to work together as a team. It has been a trade custom for men who had worked together as applicators to continue to "team up" on various jobs because of the confidence each had acquired in the other while working with ladders and scaffolds. The plaintiff and Fred Willman had worked together on various jobs. On seeing the advertisement, they went together to Weathermaster's New Haven office and applied for the work. They talked with Levine and accepted employment after satisfying him concerning their experience and ability as applicators. They were to be paid $15 per square, and it was estimated that the job would take thirty squares. The money received by them for the job was to be divided equally between them. They each owned equipment which they agreed to use on the job, making it unnecessary for Weathermaster to furnish ladders and scaffolds. On February 24, 1958, the

plaintiff and Willman, on instructions from Levine, began work on re-siding the Campbell home in accordance with Weathermaster's contract with Campbell. On Friday, February 28, the plaintiff and Willman asked Levine for some money. He agreed to obtain $100 for them. A check for that amount was delivered to Willman and the proceeds were divided equally between the plaintiff and Willman. On the following Monday, they returned to work on the Campbell house. On March 6, the plaintiff was accidentally injured while at work.

Between February 24, 1958, and March 6, 1958, Levine visited the job on at least two occasions, discussing the progress of the work with the plaintiff and Willman and making various suggestions as to methods and procedure in the re-siding, particularly in the use of backer plates and window molding. The plaintiff and Willman continued to apply backer plates as they had been doing and not as suggested by Levine. They continued to do the work in the manner they thought proper for assuring a good job. Other than the conversations about backer plates and window molding, Levine made no suggestions about how the work was to be done, because he had confidence in the ability of the plaintiff and Willman to perform the work satisfactorily. Levine was, however, empowered by Weathermaster to employ the plaintiff and direct his work. Acting through Levine, Weathermaster hired the plaintiff and directed him to go to work on the Campbell job.

After the plaintiff recovered from his injuries, he and Willman continued to work for Weathermaster on various jobs until they were laid off in July, 1958. In April, 1958, they formed a partnership under the name of Northeastern General Contractors. Under that name, they conducted a gen-

eral repair business, including aluminum siding work. The plaintiff, while he was employed on the Campbell job, used and insured his own vehicles, including the truck in which he commuted to and from work. When he and Willman applied for the job, they gave Levine a card bearing the names of "Stan," for the plaintiff, and "Fred," for Willman. Checks in payment for the work done were made payable to Willman, although the plaintiff requested that they be made payable to both men. Weathermaster did not withhold money for taxes or social security, nor did it pay social security taxes on the plaintiff's behalf. If the plaintiff and Willman needed additional material for the job they were doing, they purchased and paid for the material and were reimbursed by Weathermaster on the basis of a statement they gave to it.

The defendants' chief claim is that the finding does not support the conclusion that the plaintiff was an employee of Weathermaster and not an independent contractor. Weathermaster, in its brief, relies on two principal claims: (1) Levine was not the manager of Weathermaster's New Haven office; (2) Weathermaster exercised no control over the plaintiff. The facts justify the determination that Levine was the manager. It is undisputed that he hired the plaintiff, directed him to work on the Campbell job and made suggestions while the work was in progress. Levine was the representative of Weathermaster in the New Haven area and was authorized to enter into re-siding contracts and secure employees to perform them in a manner which would satisfy its customers. Whether Levine was called "manager" or "sales manager" is immaterial in the determination of the status of the plaintiff.

It is claimed that lack of control by Weathermaster over the plaintiff deprived him of the status of employee. The subordinate facts support the commissioner in his conclusion that Weathermaster retained control over the plaintiff and had a right to direct his work, to ask him to correct it, and to stop the work if it was not being properly performed. One is an employee of another when he renders a service for the other and when what he agrees to do, or is directed to do, is subject to the will of the other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained. *Bieluczyk* v. *Crown Petroleum Corporation,* 134 Conn. 461, 465, 58 A.2d 380. The controlling consideration in the determination whether the relationship of master and servant exists or that of independent contractor exists is: Has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work? *Jack & Jill, Inc.* v. *Tone,* 126 Conn. 114, 119, 9 A.2d 497; *Cumbo* v. *E. B. McGurk, Inc.,* 124 Conn. 433, 436, 200 A. 328.

Weathermaster claims that Levine visited the Campbell job on only two occasions and made but minor suggestions. That, however, is not the test. The test of the relationship is the right to control. It is not the fact of actual interference with control but the right to interfere which makes the difference between an independent contractor and a servant or agent. *Caraher* v. *Sears, Roebuck & Co.,* 124 Conn. 409, 413, 200 A. 324. Certainly Weathermaster, which was bound by contract to perform the work of re-siding in a workmanlike manner, had the right to ensure that result by supervision and control of the applicators. The master and servant re-

lationship existed even though the plaintiff was not on Weathermaster's pay roll, used his own equipment, occasionally bought and paid for needed supplies, for which he was reimbursed by Weathermaster, and was paid $15 per square instead of regular weekly or daily wages. *Caraher* v. *Sears, Roebuck & Co.*, supra; *Welz* v. *Manzillo*, 113 Conn. 674, 680, 155 A. 841; *Hall* v. *Sera*, 112 Conn. 291, 295, 152 A. 148; *Tortorici* v. *Sharp Moosop, Inc.*, 107 Conn. 143, 146, 139 A. 642; *Morganelli* v. *Derby*, 105 Conn. 545, 551, 135 A. 911; *Aisenberg* v. *C. F. Adams Co.*, 95 Conn. 419, 421, 111 A. 591; *Thompson* v. *Twiss*, 90 Conn. 444, 447, 97 A. 328; *Matter of Glielmi* v. *Netherland Dairy Co.*, 254 N.Y. 60, 63, 171 N.E. 906. The method used by Weathermaster for determining the payment to be made for the work done was not of controlling significance. A workman who is paid wages by piece or quantity comes within the provisions of the Workmen's Compensation Act in the same manner as one paid by the day. The failure to withhold social security or income taxes may have been a violation of the applicable law but does not preclude a finding that the plaintiff was in fact an employee. *Caraher* v. *Sears, Roebuck & Co.*, supra, 414; *Jack & Jill, Inc.* v. *Tone*, supra. The subordinate facts support the ultimate conclusion that the plaintiff was an employee of Weathermaster.

There is no error.

In this opinion the other judges concurred.